**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

WIL W. TAYLOR,

      Petitioner,

                                **Case No. 2:16-cv-237**

      v.                        **JUDGE GEORGE C. SMITH**

                                **Magistrate Judge King**

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 7), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On November 4, 2010, appellant was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2). Both counts carried specifications under R.C. 2941.145 for use of firearm and under R.C. 2941.146 for discharging a firearm from a motor vehicle.
>
> The matter came for trial before a jury in June 2012. The state's case was largely based on the testimony of Christion Chavis, the driver of a vehicle into which appellant was alleged to have fired several gunshots. Chavis, 20 years old at the time of trial, testified that he and appellant attended high school together, and appellant and his friends often harassed him at school. At one point, appellant attempted to steal a chain necklace from Chavis. The chain broke during the ensuing fight, but Chavis was able to

retrieve it. Although Chavis was offended and angered by appellant's actions, he did not want to retaliate.

Chavis was also the subject of telephone and computer harassment from appellant and his friends. Appellant left Chavis threatening messages on his Facebook page and tagged him in videos of appellant and his friends posing with guns. In late January 2010, appellant called Chavis and threatened that he "was going to get [him]" and "shoot [him]." (Tr. 117–18.) Chavis testified that he did not know why appellant did not like him, other than that appellant may have been jealous of Chavis because Chavis had been voted "best dressed" in high school. (Tr. 132.)

On February 6, 2010, Chavis and his friend, Malik Price, went to Eastland Lanes around 9:00 p.m. While the two were bowling, appellant arrived with a group of 8–10 other young men. Chavis testified that all the men, including appellant, were "throwing up gang signs and pointing * * * at [Chavis]." (Tr. 105 .) Chavis interpreted these actions to mean that the group "was out to get me or something." (Tr. 106.) Chavis and Price eventually left the bowling alley in Chavis's car, intending to make the 5–10 minute drive to Chavis's home.

Enroute to his house, Chavis noticed a car with five occupants following him. Chavis recognized three of the men in the car— appellant, Daventa Penn, and a man known to him only as Kenta. Appellant was seated in the front passenger seat; Penn was seated directly behind appellant. Both appellant and Penn had their windows rolled down. Chavis maneuvered into the right turn lane in an effort to elude the other car. The other car then pulled into the left lane and eventually stopped beside Chavis at a traffic light. Chavis estimated the distance between the two cars as "a couple feet away." (Tr. 116.) Chavis testified that he saw appellant "hang[] out [of] the car with [a] gun" and then fire several shots at Chavis's car. (Tr. 113.) Chavis was close enough to appellant to get a "good look" at him. (Tr. 116.) Chavis averred that appellant was talking when he "got out the car, hanging out the car," but he could not understand what appellant was saying because the windows in Chavis's car were rolled up. (Tr. 152.)

Chavis also testified that appellant was "grabbing for something, getting ready to hang out the car." (Tr. 154.) He stated that appellant was hanging out of the car window "from his—his chest up, far enough for him to aim * * * a gun and shoot right next to me." (Tr. 164.) According to Chavis, he was "looking down the barrel of a gun." (Tr. 169.) However, Chavis also testified that

2

appellant initially hung out of the car window without the gun, then grabbed for something inside the car. When Chavis saw this movement, he ducked down because he thought appellant was retrieving a gun. Chavis testified that he did not actually see Chavis shoot the gun at his car; however, he assumed appellant fired the shots because he was the only one who grabbed for something. After the shooting ended, Chavis sat up and saw the car drive off with appellant hanging out of the door with the gun in his hand. Neither Chavis nor Price was hit by any of the bullets.

Chavis testified that he did not call the police from the scene of the shooting because he was afraid that appellant and his friends would return and shoot at him again. Instead, he drove home and asked his mother to call the police. While he waited for the police, he observed that several of his car windows were heavily damaged from the gunshots and that several bullets and shell casings were scattered throughout the car. At trial, Chavis identified appellant as the shooter.

In addition to Chavis's testimony, the state presented testimony from three members of the Columbus Police Department. Officer Stephen Asch testified that he was on patrol shortly after midnight on February 7, 2010 when he received a dispatch that a car had been "shot up" near the Speedway gas station at the intersection of Winchester Pike and Refugee Road. (Tr. 31.) Officer Asch responded to the scene and encountered Chavis, alone. Chavis reported that a vehicle with four or five male occupants pulled up next to him while he was stopped at a traffic light on Refugee Road. According to Officer Asch, Chavis said that appellant, one of the passengers in the vehicle, fired three shots into Chavis's vehicle, and then turned left onto Winchester Pike. Officer Asch did not interview anyone else and did not find any bullets or shell casings at the scene.

Detective Delbert Chapman testified that he interviewed Chavis at his home at approximately 1:30 a.m. on February 7, 2010. During that interview, Chavis reported the details of the shooting and identified appellant as the shooter. He told Detective Chapman he believed the impetus for the shooting was the fact that the two had been engaged in an ongoing dispute over a chain necklace. According to Detective Chapman, Chavis also stated that prior to the February 7, 2010 incident, appellant had threatened to shoot Chavis's car with a .22–caliber revolver.

Detective Chapman took photographs of Chavis's car as part of his investigation. These photographs, identified at trial by Detective

Chapman as state's exhibit Nos. 1–8, depict Chavis's car after the alleged shooting. The front driver's side window and the right rear passenger window are completely blown out. Detective Chapman testified that there is a "very good possibility" that bullets pierced the glass in these windows and the glass later "crumble[d]" at the scene or during Chavis's drive home. (Tr. 66.) The glass in the left rear passenger window contains a hole but otherwise remains intact. According to Detective Chapman, the hole in the left rear passenger window indicates that a gunshot had been fired through the window. He further testified that he examined the vehicle's interior, which revealed no bullets, bullet fragments, or bullet strikes. He explained that there was a "strong possibility" that bullets entered the vehicle through a window, crossed through the interior of the vehicle, and exited through another window. (Tr. 55.)

Detective Chapman further testified that he drove to the Speedway station after concluding the interview with Chavis. There, a clerk who was working at the time of the incident reported that she did not hear any gunshots and did not hear or see anything related to the incident.

Detective James Howe testified that he interviewed Price while Detective Chapman interviewed Chavis. According to Detective Howe, the Price interview generated no viable suspects and produced nothing useful to the investigation "other than a shooting occurred." (Tr. 93.) Detective Howe stated that Price did not provide a specific name for the shooter and did not mention appellant's name.

Appellant presented no evidence in his defense, and the jury returned verdicts finding him guilty of all counts charged in the indictment.

Following a sentencing hearing on September 6, 2012, the trial court sentenced appellant to two years for each of the felonious assault convictions, to be served concurrently, three years for each of the firearm specifications, to be served consecutively to each other and to the term imposed on the felonious assault convictions, and five years for each of the discharging a firearm from a motor vehicle specifications, to be served concurrently to each other but consecutive to the terms imposed on the felonious assault convictions and the firearm specifications. In sum, the trial court imposed a prison sentence of 13 years.

Appellant appeals, assigning the following three errors:

> [I.] THE FELONIOUS ASSAULT CONVICTIONS AND
> SPECIFICATIONS MUST BE REVERSED BECAUSE THEY
> WERE OBTAINED THROUGH INEFFECTIVE ASSISTANCE
> OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH
> AMENDMENT TO THE U.S. CONSTITUTION.
>
> [II.] THE FELONIOUS ASSAULT CONVICTIONS MUST BE
> REVERSED BECAUSE THEY WERE OBTAINED AGAINST
> THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [III.] THE TRIAL COURT ERRED IN IMPOSING
> CONSECUTIVE SENTENCES FOR THE GUN
> SPECIFICATION.

*State v. Taylor*, No. 12AP-870, 2013 WL 4678049, at *1-3 (Ohio App. 10th Dist. Aug. 27, 2013).

On August 27, 2013, the appellate court affirmed the judgment of the trial court. *Id*. On

December 24, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State*

*v. Taylor,* 137 Ohio St.3d 1443 (2013).

Petitioner also pursued post conviction relief. He alleged that he had been denied the

effective assistance of counsel during plea negotiations. *Petition for Post-Conviction Relief*

*pursuant to R.C. 2953.21* ( ECF No. 7-1). The trial court denied that petition without a hearing,

and the state appellate court affirmed that judgment. *State v. Taylor*, No. 14AP-166, 2014 WL

4071498, at *2 (Ohio App. 10th Dist. Aug. 19, 2014). On March 11, 2015, the Ohio Supreme

Court declined to accept jurisdiction of the appeal. *State v. Taylor*, 141 Ohio St.3d 1490 (2015).

On March 16, 2016, Petitioner filed this action for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. He alleges that he was denied the effective assistance of trial counsel because his

attorney failed to object to certain testimony, failed to request a jury instruction on the lesser

included offense, and failed to argue that the evidence did not support a conviction for the drive-

by shooting specification (claim one); that his convictions were against the manifest weight of

the evidence (claim two); and that the trial court erred in imposing consecutive terms of

incarceration on the firearm specifications (claim three).  Respondent contends that Petitioner's claims are without merit.

## Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this case.  The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, —U.S.—, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

A federal court may not grant habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

6

28 U.S.C. § 2254(e)(1). Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying these standards rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

### Claim One

In claim one, Petitioner alleges that he was denied the effective assistance of trial counsel because his attorney failed to object to "prejudicial testimony," failed to object to the statements of Malik Price as presented through Detective Howe, failed to request a jury instruction on the lesser offense, and failed to argue that the evidence did not support a conviction on the drive by shooting specification. Liberally construing the *Petition*, the Court will presume that these are the same issues that Petitioner raised in his direct appeal.

The state appellate court rejected Petitioner's claim of ineffective assistance of trial counsel as follows:

> Under his first assignment of error, appellant contends his trial counsel was ineffective in: (1) failing to object to impermissible "other acts" evidence; (2) eliciting testimony relating to appellant's alleged gang activity; (3) failing to object to impermissible hearsay testimony; (4) failing to request a jury instruction on aggravated menacing; and (5) failing to argue that the evidence did not support a conviction on the discharging a firearm from a motor vehicle specification. Appellant further contends he was prejudiced by his trial counsel's conduct, and that the cumulative effect of the errors and omissions denied him a fair trial.
>
> In order to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). Initially, the defendant must demonstrate that counsel's performance was deficient. *Id*. at 687. To meet that requirement, the defendant must show that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Id.* A defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. *Id*. at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* If a defendant successfully establishes that counsel's assistance was ineffective, he or she must next prove the second prong of the *Strickland* test—that counsel's deficient performance was prejudicial. *Id*. at 687. To establish the second prong, the defendant must demonstrate that counsel's errors were so serious as to deprive him or her of a fair trial, a trial whose result is reliable. *Id.* A defendant meets this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.
>
> Appellant first contends his counsel was ineffective in failing to object to impermissible "other acts" evidence. Chavis testified that he had on-going problems with appellant during high school. In response to the prosecutor's question about what type of problems he had with appellant, Chavis averred, "[s]hootings, fighting, harassment." (Tr. 101.) Appellant contends that Chavis's reference to "shootings" constitutes "other acts" evidence establishing his

propensity to shoot at Chavis, *i.e.*, that because appellant previously shot at Chavis, he likely shot at him again.

Initially, we note that counsel's failure to make objections is within the realm of trial strategy. *State v. Burney*, 10th Dist. No. 06AP–990, 2007–Ohio–7137, ¶ 66, citing *State v. McCroskey*, 9th Dist. No. 96CA0026 (Apr. 2, 1997). "[C]ompetent counsel may reasonably hesitate to object in the jury's presence because objections tend to disrupt the flow of a trial, and are considered technical and bothersome to the jury." *State v. Tolliver*, 9th Dist. No. 03CA0017, 2003–Ohio–5050, ¶ 19, citing *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994). Accordingly, the failure to object, standing alone, is insufficient to establish ineffective assistance of counsel. *Burney* at ¶ 66, citing *State v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791, ¶ 168.

Moreover, Chavis's testimony did not constitute "other acts" evidence proscribed by Evid.R. 404(B). Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *State v. Smith*, 49 Ohio St.3d 137 (1990), the Supreme Court of Ohio explained that: "Evid.R. 404(B) is essentially an extension of Evid.R. 404(A) which is intended to preclude a prejudicial attack on a defendant's character. Generally, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner. However, Evid.R. 404(B) permits 'other acts' evidence for 'other purposes' including but not limited to certain enumerated issues." *Id*. at 140.

Chavis's allusion to "shootings" does not constitute prior "other acts" evidence. The evidence at trial demonstrates that Chavis used the term "shootings" in reference to the crime for which appellant was being tried. No evidence was presented that appellant shot at Chavis prior to the incident on February 7, 2010. Chavis testified in detail about his prior encounters with appellant. Those encounters can best be characterized as "fighting" and "harassment," the other two words Chavis used to illustrate his problems with appellant. Thus, the only reasonable interpretation of Chavis's testimony regarding "shootings" is that he was referring to the shooting that occurred on February 7, 2010.

This interpretation is further supported by Chavis's response to a question posed during cross-examination. Defense counsel asked Chavis, "Now, you say you have a history with [appellant], correct, as far as before this shooting?" (Tr. 123.) Chavis responded, "No. This is my first—." (Tr. 123.) However, before Chavis could complete his answer, defense counsel clarified that he was asking about the fight over the chain that Chavis had testified about earlier. Defense counsel stated, "No. I mean, you said something about a fight before this. Before the alleged shooting, there was a fight that happened between you and [appellant]?" (Tr. 123.) This exchange arguably suggests that Chavis was confused about the question, and, had he been permitted to complete his response, would have testified that there had been no previous shooting by appellant.

Because Chavis was not referring to "other acts" but was actually referring to the act for which appellant was on trial, there was no basis for defense counsel to object. "'Evid.R. 404(B) does not apply if the acts in question are intrinsic as opposed to extrinsic, *i.e.* the acts are part of the events in question or form part of the immediate background of the alleged act which forms the basis for the crime charged.'" *State v. Crew*, 2d Dist. No.2009 CA 45, 2010–Ohio–3110, ¶ 99, quoting *State v. Bogan*, 8th Dist. No. 72278 (Aug. 6, 1998). Since defense counsel had no basis upon which to object, his failure to do so could not constitute ineffective assistance.

Appellant next asserts his trial counsel was ineffective because he raised the issue of appellant's alleged gang affiliation in his opening statement and during his cross-examination of Detective Chapman. Appellant contends that these references unfairly prejudiced him, allowing the jury to infer guilt from his alleged gang activity.

In his opening statement to the jury, defense counsel averred:

[J]ust to give you a little background information on this, my client and this particular Mr. Chavis went to high school together. Okay? They've known each other since high school. They've had some issues with each other since high school. It was something about some type of fight or something that broke out between Mr. Taylor and Mr. Chavis while at school, so this thing has been brewing here for a while.

I don't know if you guys are familiar with kind of the younger guys with some of the stuff in the hip hop community. One of the things

you do that's very disrespectful that they do to each other is try to take someone's chain. There was a [sic] issue in here of whether someone's chain was either taken or tried to be taken. And within that community, it's very disrespectful, and it really, really, really sets things off, just like a gang war or something if you take someone's chain. It's respectful if you can get it, and it's very disrespectful if yours is taken away from you.

(Tr. 24–25.)

During cross-examination of Detective Chapman concerning an informational summary he prepared in conjunction with his interview of Chavis, the following colloquy occurred:

Q. Now, in here Mr. Chavis was pretty—pretty descriptive of Mr. Taylor. He states he was an Elaine Crip?

A. That's what he said, yes.

Q. Any investigation into any of that? Do you work with the gang unit?

A. In this case, this is kind of how I've found out. When this originally happened, I was looking for William Taylor, not Wil Taylor. So I had trouble finding pictures. So I contacted our gang unit, and I contacted our high school resource, since this problem stemmed from school, and that's how I came up with Wil Taylor's name, and that's why it took a couple days.

* * *

Q. But what I'm saying, do you work with the gang unit?

A. I don't work with them. I mean, I call—yeah.

(Tr. 70–71.)

"'The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'" *State v. Abdullah*, 10th Dist. No. 05AP–1316, 2006–Ohio–5412, ¶ 35, quoting *State v. Leonard*, 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 146. " '[A]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.'"

11

*Abdullah* at ¶ 35, quoting *State v. Dorsey*, 10th Dist. No. 04AP–737, 2005–Ohio–2334, ¶ 22.

This court will not second-guess what appears to have been a tactical decision made by defense counsel to foreclose the sting of appellant's alleged gang affiliation by mentioning it in opening statement and raising it during cross-examination when defense counsel reasonably could anticipate its admission at trial. Such anticipation proved to be correct, as Chavis testified on direct examination that appellant was "throwing up gang signs" at the bowling alley. (Tr. 105.) "[T]he choice to raise damaging evidence first is an acceptable trial strategy that a defendant can use to enhance his credibility." *State v. Smith*, 9th Dist. No. 23542, 2007–Ohio–5119, ¶ 15. Although appellant did not testify in his own defense, the record indicates that appellant may have initially wished to testify, but ultimately chose not to do so.

Further, "'[g]ang affiliation can be relevant in cases in which the interrelationship between people is a central issue.'" *State v. Humberto*, 196 Ohio App.3d 230, 2011–Ohio–3080, ¶ 35 (10th Dist.), quoting *State v. Drummond*, 111 Ohio St.3d 14, 2006–Ohio–5084, ¶ 112. "Gang evidence also may be relevant when it is necessary to 'provide[ ] the jury with crucial background information in considering the evidence.'" *Humberto* at ¶ 35, quoting *Drummond* at ¶ 112. One of the strategies employed by defense counsel was that Chavis concocted the story about the shooting as retribution for appellant attempting to steal his chain. To aid the jury in understanding why Chavis would seek revenge over what may appear to be a trivial matter, defense counsel needed to clarify the importance of chain-stealing in the hip hop community. To that end, counsel explained in his opening statement that stealing someone's chain is egregious enough to ignite a gang war. Counsel then elicited testimony about appellant's gang affiliation and that Chavis was angered by appellant's attempt to steal his chain. The disrespect associated with stealing someone's chain, along with appellant's gang affiliation, demonstrated the extent of the on-going dispute between Chavis and appellant. Counsel argued that the dispute over the theft of the chain provided Chavis a motive to seek revenge against appellant. This strategy reasonably required defense counsel to discuss and question appellant's alleged gang affiliation.

Finally, as to appellant's argument regarding defense counsel's opening statement, we observe that the trial court expressly instructed the jury that opening statements and closing arguments

12

of counsel are not evidence but only designed to assist the jury. A jury is presumed to follow the court's instructions. *State v. Hancock,* 108 Ohio St.3d 57, 2006–Ohio–160, ¶ 86.

For these reasons, we find that defense counsel did not provide ineffective assistance by raising the issue of appellant's alleged gang affiliation.

Appellant next argues that defense counsel was deficient in failing to object to hearsay statements made by Detective Howe. Detective Howe testified that Price told him that a shooting had occurred. Appellant argues that Detective Howe's statement about what Price told him constitutes inadmissible hearsay pursuant to Evid.R. 801(D)(1) because Price did not testify at trial and thus was not subject to cross-examination about his interview with Detective Howe. Noting defense counsel's theory that no shooting occurred and that Chavis fabricated the story in retaliation for the chain-stealing incident, appellant maintains that the challenged testimony prejudiced him because it corroborated Chavis's testimony that there was a shooting.

Assuming *arguendo* that the challenged testimony is hearsay, counsel's failure to object reasonably may have been strategic. Detective Howe testified that Price did not identify the shooter and did not even mention appellant's name. Defense counsel may have welcomed this evidence and reasoned that objecting to it would be counterproductive.

Further, the challenged statement dovetailed with defense counsel's alternative theory of the case, *i.e.*, that if a shooting had actually occurred, appellant was not the shooter. Defense counsel questioned Chavis about Devanta Penn, the man seated directly behind appellant in the car from which the shots were fired. Counsel elicited testimony that Penn did not like Chavis, that he had harassed him prior to the night of the shooting, that he was one of the men pointing at him in the bowling alley, and that he had his car window rolled down when the shooting occurred. Counsel also elicited testimony that Chavis feared that all of the men in the car, including Penn, were "going to do something to [me]." (Tr. 155.) Counsel also elicited testimony from Chavis that he did not actually see appellant fire gunshots into his car. Defense counsel's questions about Penn, coupled with his cross-examination of Chavis, were arguably designed to offer the jury another possible shooter, thus creating reasonable doubt as to appellant's guilt. Defense counsel's failure to object did not constitute ineffective assistance.

Next, appellant argues that trial counsel was ineffective in failing to request a jury instruction on aggravated menacing as a lesser-included offense of felonious assault. Appellant was charged with two counts of felonious assault in violation of R.C. 2903.11(A)(2), which provided, in pertinent part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." R.C. 2903.21(A) proscribes aggravated menacing, stating, as relevant here, that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person."

In support of his contention that he was entitled to an aggravated menacing instruction, appellant argues that based on the evidence, the jury could have reasonably concluded that neither Chavis nor Price were in the car at the time of the shooting because they were not wounded by the shots. Appellant further contends that based on Detective Chapman's testimony that Chavis told him that appellant had previously threatened to shoot Chavis's car with a .22 revolver, the jury could have reasonably concluded that appellant intended only to shoot Chavis's car, not Chavis.

 "[A]ggravated menacing is not a lesser-included offense of felonious assault." *State v. Easley*, 10th Dist. No. 07AP–578, 2008–Ohio–468, ¶ 66. *See also State v. Thompson*, 10th Dist. No. 97APA04–489 (Mar. 24, 1998) (finding that aggravated menacing "contains the additional element of causing apprehension, which is not contained in the crime of felonious assault. As statutorily defined, felonious assault can be committed without committing aggravated menacing. Therefore, aggravated menacing is not a lesser included offense of felonious assault").

Appellant relies on *Easley* for the proposition that aggravated menacing is a lesser-included offense of felonious assault. However, *Easley* actually states that "aggravated menacing is a lesser offense of felonious assault in that it is an inferior offense." *Id.* at ¶ 66. Appellant does not argue that aggravated menacing is an inferior degree offense.

However, even if an instruction on aggravated menacing as a lesser or lesser-included offense of felonious assault would have been appropriate based on the facts of the case, "[f]ailure to request instruction on lesser included offense is matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Griffie,* 74 Ohio St.3d 332, 333 (1996). Appellant must

14

demonstrate that failure to make the request resulted from a reason other than trial strategy. *State v. Ryan*, 10th Dist. No. 08AP–481, 2009–Ohio–3235, ¶ 79, citing *Griffie.* Appellant does not suggest that defense counsel's decision not to request a jury instruction on lesser or lesser-included offenses was anything other than trial strategy. "Although there is risk involved in not requesting an instruction on a lesser-included offense when the evidence supports it, the pay-off can also be substantial, that is, acquittal if the strategy prevails." *State v. Colvin*, 9th Dist. No. 26063, 2012–Ohio–4914, ¶ 15.

In light of the evidence presented at trial, defense counsel reasonably could have been pursuing a valid "all or nothing" strategy. Defense counsel theorized that the shooting never occurred, or, if it did, appellant was not the shooter. A request for an aggravated menacing instruction would have been inconsistent with that strategy. *See State v. Golden*, 10th Dist. No. 01AP–367 (Dec. 20, 2001) ("Here, where seeking a lesser-included instruction would have been inconsistent with the defense theory, the failure of counsel to request such an instruction did not constitute ineffective assistance of counsel."). Appellant has not demonstrated that his trial counsel was ineffective by failing to request a jury instruction on aggravated menacing.

Appellant's final argument under his first assignment of error is that trial counsel was ineffective in failing to argue that the evidence at trial was insufficient to support a conviction on the specifications under R.C. 2941.146. R.C. 2941.146(A) contains a firearm specification that adds a five-year prison term when a defendant commits a felony that includes the element of purposely or knowingly causing or attempting to cause the death of or physical harm to another, if the crime "was committed by discharging a firearm from a motor vehicle other than a manufactured home."

At the close of the state's case, defense counsel moved for dismissal of the case based upon "the lack of evidence." (Tr. 201.) Because counsel's general Crim.R. 29 motion arguably encompassed the R.C. 2941.146 specifications, appellant's contention that counsel failed to argue that the evidence was insufficient to support the convictions on the specifications is without merit.

Furthermore, appellant's reliance on *State v. Swidas*, 133 Ohio St.3d 460, 2012–Ohio–4638, is misplaced. In *Swidas,* the Supreme Court of Ohio held that "R.C. 2941.146 is not applicable when a

person fires a weapon while standing completely outside a motor vehicle." *Id.* at ¶ 1. Contrary to appellant's assertion, Chavis did not testify that appellant completely exited the car before firing the gun into Chavis's car. Chavis testified that appellant fired the shots while leaning out of the car window, and that neither appellant nor any of the other occupants of the car ever exited it. Thus, there was sufficient evidence to convict appellant on the two R.C. 2941.146 specifications, and counsel's performance would not have been deficient even if he had not argued insufficiency of the evidence.

Having concluded that appellant has not shown that his trial counsel's performance was deficient with respect to any of the issues raised in this assignment of error, we need not address the prejudice prong of the *Strickland* test. Appellant's first assignment of error is overruled.

*State v. Taylor*, 2013 WL 4678049, at *3-9.

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . .the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). As the state appellate court noted, the United States Supreme Court has set forth the legal principals governing claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984), requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013). A petitioner can demonstrate the deficient performance by counsel by demonstrating "that counsel's representation fell below an objective standard of reasonableness." *Id.* To make such a showing, a petitioner must overcome the strong presumption that his counsel rendered adequate assistance. and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689. *See also Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009).

16

In the action presently before the Court, and for the reasons discussed by the state appellate court, the Court agrees that Petitioner has failed to establish the denial of the effective assistance of trial counsel under the two-prong *Strickland* test. The record does not reflect the admission of any otherwise inadmissible "other acts" evidence, and many of the alleged errors about which Petitioner complains appear to have constituted matters of a trial strategy that was not unreasonable in view of the evidence presented. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance,* 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 690). Furthermore, the record fails to reflect that Petitioner can establish prejudice from counsel's failure to request a judgment of acquittal or failure to request a lesser offense jury instruction on aggravated menacing.

A petitioner's claim of ineffective assistance of counsel is difficult to establish in an action under § 2254 when the state courts have rejected the merits of that claim:

> As previously discussed, . . . an ineffective-assistance-of-counsel claim is governed by the test articulated in *Strickland,* where "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. 2052. By itself, this is a deferential standard that is challenging for a claimant to meet. Where the claimant is a state habeas petitioner whose claims are subject to AEDPA, that standard is raised even higher, as the petitioner must show that the state court's application of *Strickland* was itself unreasonable. This amounts to a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, —— U.S. ——, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013) (internal quotation omitted) (emphasis added). Stated differently, AEDPA requires us to "take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (internal quotations omitted).

*Kelly v. Lazaroff*, 846 F.3d 819, 831-32 (6th Cir. 2017).  Having considered Petitioner's claim of ineffective assistance of trial counsel by reference to these standards, this Court concludes that Petitioner is not entitled to relief on this claim.

Claim one is without merit.

## Claim Two

In claim two, Petitioner alleges that his convictions were against the manifest weight of the evidence, because the testimony of prosecution witness Chavis was contradictory and not credible.  This claim fails to provide a basis for federal habeas corpus relief.  *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 Fed.Appx. 761, 765, n. 4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017)(citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio)("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law.").

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Claim two is without merit.

### Claim Three

In claim three, Petitioner alleges that the trial court improperly imposed consecutive terms of incarceration on the firearm specifications, because only one weapon was involved. This claim presents an issue regarding the alleged violation of state law and does not provide a basis for federal habeas corpus relief.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).  Further, this Court defers to a State's interpretation of its own laws.  *See Calhoun v. Tibbals,* No. 2:15-cv-03026, 2017 WL 914737, at *9 (S.D. Ohio March 8, 2017)*(citing Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985); *Beavers v. Franklin County Adult Probation,* No. 2:13-cv-00404, 2016 WL 5660275, at *1 (S.D. Ohio Sept. 29, 2016)(citation omitted).

Petitioner did not raise this claim as an issue of federal constitutional magnitude in the state appellate court.  In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although this fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is nevertheless rooted in principles of federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment.

In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

In presenting this claim to the state appellate court, Petitioner argued only that the trial court had violated state law in imposing consecutive terms of incarceration on the firearm specifications. He did not present any argument regarding the application of federal law to this claim, nor did he cite Ohio cases employing a federal constitutional analysis in support of this claim. *See Brief of Defendant-Appellant* (ECF No. 7-1, PageID# 102). Moreover, the state appellate court addressed the claim only in terms of an alleged violation of state law:

> [A]ppellant argues that the trial court erred in imposing consecutive sentences on the firearm specifications. We disagree.
>
> Former R.C. 2929.14(D)(1)(b) provided that the trial court could impose only one prison term for firearm specifications accompanying felonies arising out of the same act or transaction. However, former R.C. 2929.14(D)(1)(g) provided an exception to that principle:
>
> If an offender is convicted of * * * two or more felonies, if one or more of those felonies is * * * felonious assault, and if the offender is * * * convicted of * * * a specification of the type described under division (D)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (D)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * * and, in its discretion, also may impose

> on the offender the prison term specified under that division for any or all of the remaining specifications.
>
> In this case, appellant was convicted of two counts of felonious assault, and in connection with each he was convicted of a division (D)(1)(a) firearm specification (three-year firearm specification pursuant to R.C. 2941.145). Thus, pursuant to former R.C. 2929.14(B)(1)(g), the trial court was required to impose a prison term for each of the "two most serious specifications" of which appellant was convicted, *i.e.*, the three-year firearm specifications accompanying the felonious assault counts. Further, former R.C. 2929.14(E)(1)(a) required the three-year firearm terms to be served consecutively. *See State v. Worth*, 10th Dist. No. 10AP–1125, 2012–Ohio–1661. Accordingly, appellant's third assignment of error is overruled.

*State v. Taylor*, 2013 WL 4678049, at *11.  Thus, this Court finds that Petitioner failed to present this claim to the state courts as a federal constitutional claim and, further, this Court concludes that Petitioner has not established cause for his failure in that regard.  Petitioner has therefore waived this Court's review of any such federal claim in these proceedings.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

   *s/  Norah McCann King*   
Norah McCann King
United States Magistrate Judge
March 29, 2017